Scherr et ux. *v.* Page, Admx., Appellant.
Spiegelman for Use *v.* Page, Appellant.

Argued April 27, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNING-
HAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Frank C. McGirr,* for appellant.

*Edward J. Gannon* of *Hazlett, Gannon & Walter,* for appellees.

OPINION BY PARKER, J., October 10, 1932:

These cases come to us on appeals from orders of the court of common pleas of Allegheny County, refusing petitions of the defendant for leave to appeal from the county court, and while they involve different plaintiffs and land, they are identical in all other respects. They were tried together, involve the same questions, and will be disposed of in one opinion. The questions involved concern the right of a purchaser to recover hand money paid to an administratrix on a proposed sale of real estate, the title to which was in the heirs of her intestate.

We will state such of the facts as are not in dispute and are essential to a proper disposition of the cause. David Page, at the time of his death, was the owner of parcels of real estate in the County of Allegheny and left to survive him as heirs a widow, Margaret H. Page, also his administratrix, and eight children. In the latter part of 1925 separate writings were prepared in the usual form for purchase and sale of real estate. In the captions of these papers "David Page heirs" were named as parties of the first part and in one agreement Harry Scherr and Lillian Scherr, his

wife, were parties of the second part, and in the other Ida Spiegelman was party of the second part. The agreements provided that the first parties on or before two months, at their own cost and charge, would convey in fee simple to second parties real estate fully described, for a consideration of $8,750, of which $200 was paid in cash, $1,800 was to be paid on delivery of deed and balance secured by a purchase money mortgage. The second parties agreed to purchase on these terms. While the writings were signed by the parties of the second part and by Margaret H. Page, administratrix of the estate of David Page, deceased, they were never signed by any of the children of David Page or by anyone for them. The deeds were not delivered within the time specified, but on October 27, 1926, a letter was written to an alleged agent of the parties of the second part advising them that the Page heirs were then ready to convey. This letter was offered in evidence and on trial it was conceded by counsel in that connection as follows: "We have no objection to this letter as notice to us that they are ready" and "I am willing for them to offer it as a notice that on that date they were ready to carry out their agreement."

Suits were instituted before an alderman on December 7, 1926, for the recovery of the hand money, expense of search of title and interest. Judgments being rendered for the plaintiffs, appeals were taken to the county court. The causes were placed at issue in that court and after trial verdicts were directed for the plaintiffs in each case for the $200 hand money and $50 for the expense of search of title with interest. Judgments having been entered petitions were presented to the court of common pleas asking for leave to appeal and praying that judgments be entered n. o. v. in favor of the defendants. In the statements of claim it was alleged that the $200 hand money was

paid to the defendant as administratrix of the estate of David Page. This was admitted in the affidavits of defense and such admissions offered in evidence. The record presented to us does not contain a complete transcript of all of the proceedings nor is any reason given for such omissions, but from the opinion of the court we learn that the administratrix admitted that she still retained the $200. The common pleas court in an opinion held that recovery could not be had in these actions for sums expended for search of title and made an order directing that the petition for appeal should be refused upon the plaintiffs remitting their claims for $50 and interest thereon. The plaintiffs having filed of record agreements to remit the $50 with interest, formal orders were entered refusing the appeal.

The contention of the defendant is that the so-called agreement in each case was a nullity of no binding force and effect and that, therefore, the hand money cannot be recovered in this form of action. With the first part of this proposition we are in accord. The agreement is not signed by the parties of the first part, the heirs of David Page, as named in the agreement. One of the Page heirs, who was called as a witness for the defendant, stated that he had not made any agreement or authorized the administratrix to make one for him. It is conceded by all parties that the administratrix was without authority at law or in fact to agree to convey the real estate of decedent. "An administrator has, by law, no interest in the real estate of an intestate": Myers v. Hodges, 2 Watts 381, 383. A. J. Barone, a witness called on behalf of the defendant, testified that at the time the hand money was paid it was explained that one of the heirs was in Paris and that they would send these agreements, together with a deed, to Europe for signature. This evidence being undisputed, it is apparent that the

agreement was not to be in force until so signed. This amounted to an offer by the plaintiffs to purchase which was not accepted in any form for more than eleven months. The offer by its very terms expired in sixty days after the dates of the so-called agreements and could not be made effective by an agreement to convey many months later.

May the plaintiffs recover in these actions the hand money which it is admitted the defendant received, retained and has? Two reasons have been suggested why the plaintiffs may not recover. It is first contended that the court of common pleas did not have jurisdiction. The authorities are to the contrary. In Gaffney's Est., 146 Pa. 49, a decedent in his lifetime deposited in a bank a sum to the credit of himself as "trustee for Polly McKim." The bank paid the money to decedent's personal representative, who accounted for it. Upon order, Polly McKim was awarded the amount of deposit. The Supreme Court in affirming the award said (p. 53): "The money is now in the hands of the executor of Hugh Gaffney; and if it really belongs to the estate of Polly McKim, no good reason is apparent why she should proceed against the bank, and compel it to pay the money the second time. An action for money had and received would lie against the Gaffney Estate, and, as such action would lie it may be recovered in this proceeding in the orphans' court." In Paxson's Estate, 225 Pa. 204, the property of a third party found its way into hands of the executor of decedent and the court in considering the question of jurisdiction referred with approval to the remarks made in the Gaffney Estate and further said (p. 206-207): "The party claiming property in the custody of the law is the actor; he has a choice of forum and remedy. He can elect to proceed at common law for money had and received, or he may submit his claim upon distribution proceedings in the orphans'

court, as was done in Gaffney's Estate, supra.'' Mr. Justice MOSCHZISKER in a clear and exhaustive opinion in Williams' Estate, 236 Pa. 259, is careful to note (p. 268) the conclusions of the Supreme Court in the Gaffney and Paxson cases and point out that in such cases the jurisdictions of common pleas and orphans' court are concurrent.

We are of the opinion that the actions as brought may be considered as actions for money had and received. All of the facts necessary to make out such a case are set forth in the pleadings. While it is true that certain conclusions of law are set forth in the statements of claim that are not correct and that the actions are not specifically designated as for money had and received, the defendant herself in her answers averred that the administratrix had no authority as administratrix to sell real estate and admitted that she had the money in her capacity as administratrix. Although we are of the opinion that an amendment was not necessary, if such were not the case, an amendment would have been proper at any stage of the proceedings before or after trial, as the defendant was informed of the facts relied upon and was not surprised.

The judgments of the lower court are severally affirmed at the cost of the appellant.